## WIGGINS v. THE STATE.

1. Where the facts to which an alleged absent witness would have testified are not stated, his absence affords no ground for a continuance.
2. While a judge, after the evidence in a criminal trial has been closed, may, after giving counsel an opportunity to be heard, properly announce, in advance of the argument before the jury, the views he entertains upon the issues of law involved, and, if his mind is settled in regard thereto, indicate how he will charge as to such issues, it is improper without hearing from counsel to make at that time an extensive and detailed statement as to what the charge will be, or to direct the line of argument in such manner as to limit the counsel for the accused in his argument before the jury to the issues suggested by the judge. In a close and doubtful case such conduct on the part of the judge will be cause for a new trial.
3. In a prosecution for an assault with intent to murder, where there is no theory under the evidence upon which the alleged assault would have been justified, the court may properly refuse to charge the law of justifiable homicide.
4. The verdict in the present case was demanded by the evidence; there was no material error in the charges of the court or in the refusal to charge; and the trial judge did not err in refusing a new trial.

Argued April 19, — Decided May 5, 1897.

Indictment for assault with intent to murder. Before Judge Sweat. Wayne superior court. November term, 1896.

W. M. Wiggins was found guilty of shooting at another (J. M. Harper) not in his own defense or under other circumstances of justification. His motion for a new trial was overruled, and he excepted. The motion alleges, in addition to the general grounds:

1. That the court erred in refusing to grant a continuance on defendant's motion on account of the absence of three witnesses, two of whom were negroes who were present at the shooting, upon whom subpoenas had been served, who had promised to appear and testify and were not absent by defendant's procurement and consent, and whom he expected to have at the next trial, he having no other witnesses by whom he could prove the same facts, being unable to corroborate the statements of his witnesses without them. The other absent witness was W. B. Gibson who was in Florida.

2. After the court had given his charge to the jury and

directed them to retire, and while they were in the act of re-
tiring, the defendant's counsel tendered the following request
to charge, but the court declined to recall the jury for the pur-
pose of charging the same: "If the jury should believe
from the evidence that defendant, Gibson, and Harper, the
party alleged to have been shot, had entered upon a lawsuit
for the recovery of certain lands, and that all parties inter-
ested agreed that the defendant should defray the expenses of
said lawsuit, and defendant did lay out and expend money
thereon, and the agreement between said parties was, that in
the event of success in said lawsuit, defendant was to be
deeded a one half or one fourth interest in the land sought to
be recovered in said lawsuit; and that said lawsuit terminated
in favor of said parties, and that Harper and others agreed
that said defendant should keep all deeds and titles thereto till
he was deeded his part, and that Harper went to defendant's
place of business and forcibly and without the consent of de-
fendant, and violently and fraudulently, took said papers from
defendant, and made off with them, under such circumstances
said muniment of titles became such property as would be the
subject-matter of robbery, and said Harper, in so taking said
papers, if done with intent to steal the same, and not under a
fair claim of right, then Harper was guilty of robbery, and if
defendant shot him to prevent the consummation of robbery,
he would be justifiable by law, and the jury should acquit."

3. Before argument to the jury had begun and after the evi-
dence had closed, the court made the following remarks in the
hearing of counsel and the jury: "The evidence having closed
in this case, the court deems it but right and proper, before
the argument proceeds, to announce certain rules of law which
will be given in charge to the jury, in order that counsel, both
for the State and the defense, may argue the case in the light
of the instructions which the court will give. In this case the
defendant is indicted for assault with intent to murder; under
the defense which has been interposed and the statement of the
accused, the law of murder and of manslaughter is involved,
and will be given in charge to the jury. In the event the de-
fendant, Wiggins, had killed the prosecutor, or the injured

party, as I believe it is a special presentment or some other party is the prosecutor, it will be a question for the jury to determine whether or not in that event he would have been guilty of murder or voluntary manslaughter; and, death not resulting, whether he would be guilty of assault with intent to murder, as charged, or of shooting at another not in his own defense or under other circumstances of justification. The court will not give in charge to the jury the law of justifiable homicide. The court will instruct the jury, that where one person takes a land deed from another, regardless of whether he has any right to do so or not, and is undertaking to leave with it or carry it off, or carry it away, that the party from whom he takes it would not be justified or excused by the law for shooting him. A land deed is simply the evidence of title or ownership in property, and is not itself property, and that is true regardless of how it may be held. If in this case there was a deed, and Harper, and perhaps another, having in him or them title to certain real estate, and if it be true that the defendant, Wiggins, became entitled to an interest in the land, the mere holding of the deed would not convey any title in him; it would have required the execution of a deed by the parties in whom the right of title was conveyed and vested, in order to convey it in him, or in some way by some legal proceeding the divesting of the title in the other parties and vesting it in him; the mere manual transfer of the deed from one to another, without more, does not effect or accomplish that. Now, whatever may have been the apprehension or belief of the defendant, Wiggins, with reference to his right to retain the deed in question, and as to the effect of his retaining the deed or permitting it to leave his possession, the court will instruct the jury that that will make no difference in the case whatever. If it should be shown that Wiggins was in possession of the deed in question, believing that he had a right to it, and that the parting of the possession of it would perhaps affect him in some way, and he thus undertook to retain possession of it, and in an effort upon the part of Harper to obtain the possession of it they became involved in a diffculty, and as the result of that difficulty the defendant, Wiggins, shot Har-

per, then it will be a question for the jury to consider and pass upon and determine, if death had ensued, whether the defendant would have been guilty of murder or of voluntary manslaughter. If it should appear in that connection that Harper, having obtained the deed, and while leaving or running away was pursued and shot by Wiggins, it would be a question still then for the jury to pass upon and determine as to whether the shooting was done under such circumstances as would have rendered him guilty of murder; whether he would be guilty of murder or of voluntary manslaughter. If the jury should believe that the shooting was the result of a sudden impulse of passion produced upon Wiggins by the taking of the deed by Harper, and his leaving with it, and by the difficulty between them, and that there had not been sufficient interval or time for reason to regain its sway with him, and that he shot as the result of a sudden impulse of passion and not through malice, then the court will instruct the jury that if they should find that to be true, that that would have the effect of reducing the offense from murder to manslaughter, and, death not resulting, of shooting at another not in his own defense or under other circumstances of justification. As to whether or not it has been shown that Harper was shot by Wiggins, the court will instruct the jury that that is a question which they may determine from all the facts and circumstances proven in the case, just as they would determine any other fact. Now, as the court stated in the outset, for the benefit of counsel both for the State and the defense, the court has briefly outlined the instructions which will be given by the court to the jury in this case, and, as the court has stated, for the purpose of enabling counsel, in the argument of this case, to argue it in the light of the instructions which will be given by the court to the jury. You may proceed, gentlemen, with the argument; the State has the opening and conclusion." It is assigned as error, that these remarks were in the nature of a charge to the jury, which the court is only allowed to give after final argument by counsel, that they tended to withdraw from the jury a full and complete consideration of the case made by the defense, that they were too limited and narrowed the argument and contentions

of counsel to one of two verdicts, to wit, assault with intent to murder and voluntary manslaughter, totally excluding justifiable homicide and shooting at another under circumstances of justification.

4. Error in refusing to allow defendant's counsel in opening argument to read to the court in the hearing of the jury certain rulings of the Supreme Court of this State, and other authorities relied upon by the defense to bear out the contentions in opposition to the holdings and rulings of the court upon the law already announced. And in refusing to allow said counsel to argue to the court in the hearing of the jury, that if they should believe from the evidence that defendant had such a deed in his possession and held by him with the consent of Harper and others until they could make him a deed to his portion of the land to reimburse him for the money he had spent in the recovery of the same, and that Harper came to defendant and forcibly took the deed from him, after a scuffle therefor, and was making away with it, these would constitute such other circumstances of justification as would justify him in shooting Harper.

5. Error in charging that the law of justifiable homicide did not enter into the case.

6. The court charged: "Now, you apply the truth, as you shall find it in this case, to these rules of law, and thus tested, if you shall find that had death resulted that the defendant would have been guilty, not of murder, but of voluntary manslaughter, then, death not resulting, you would be authorized to convict the defendant for the offense of shooting at another not in his own defense or under other circumstances of justification." Error, in excluding the consideration of whether defendant shot Harper under circumstances of justification.

7. The court charged: "Now the court charges you in this connection, that where a person has a land deed in his custody or possession and in which he may claim some interest, or some interest in the land conveyed or covered by the deed, and another party who may himself claim the right to and possession of the deed, or some right or interest in it or the land covered by it, or regardless of how that may be, forci-

bly takes it from the possession of the other party, and after
obtaining possession of the deed, and while leaving and going
away, that he is pursued by the other party who has armed
himself with a pistol, a weapon likely to produce death, and is
shot, whether he be killed or whether it be or results in an
attempt to kill him, the court charges you that a party would
not be justified or excused by our law in going to that extent,
even under such circumstances, as that taking the life of his
fellow-man or attempting to do it; but if he took the life of
his fellow-man under such circumstances as that, he would
either be guilty of murder or voluntary manslaughter, accord-
ing as the jury might determine, looking to all the facts and
circumstances of the case.    The court charges you that where
that occurs, one party takes a deed from another under circum-
stances like that, and thereupon they become involved in a
fight or difficulty of some kind, if the party taking the deed
and undertaking to retain it commits no felony upon the per-
son of·the other, and either or all of these circumstances so
provokes the other one into a sudden violent impulse of pas-
sion as is uncontrollable, and while laboring under that im-
pulse of passion he arms himself and shoots and kills the other
party, or attempts to do it, the court charges you that, had
death resulted under such circumstances as that, the jury
might be authorized to find that it was not murder but volun-
tary manslaughter, and death not resulting, the jury might be
authorized to find that it was not an assault with intent to
murder, but shooting at another not in his own defense or un-
der other circumstances of justification; but if, in considering
the question, the jury should determine that between the time
of the provocation given and the sudden impulse of passion
thereby produced there was a sufficient interval for reason to
regain its sway before the shooting was done, then if the party
shot and killed, the law would make it murder and attribute
it to deliberate revenge, and as done with malice, and if the
party was not killed but shot, the law would make the offense,
in such a case as that, an assault with intent to murder." As-
signed as error, for the reason that the taking of a deed under
the circumstances stated would be a felony, to prevent which

the shooting would have been justifiable even though death resulted.

8. The court charged: "There is no question made by the defense in this case that the defendant Wiggins shot Harper in the defense of his own person, or at a time when there was any necessity for him to shoot him in defense of his own person; there is no such defense as that in this case, none such involved, none such made, and there is no such defense involved in this case, or justification involved in this case, on the part of the defense to justify and excuse him, if he shot at Harper as claimed by the State, because of his having taken the land deed in question; that is a question which you need not consider, and it will be well for you to bear that in mind; that the question of the defendant Wiggins shooting Harper in defense of his own person is not involved; and as to the question of his having shot him and having a right to do it for taking the land deed, that is not involved, because there is nothing in this case that would justify or excuse him in that connection for. having shot him, if he did shoot him." Alleged to be an incorrect presentation of the law, and as excluding the main defense of justification.

9. The court charged: "If you should determine in this case that it has not been shown to your satisfaction that the defendant Wiggins shot Harper at all, as alleged, then of course you would be authorized to acquit him of any offense; but if it has been satisfactorily shown to you that he did the shooting as claimed, the only two questions for you to look to then and determine is as to what offense he committed in doing the shooting; did he commit the offense of assault with intent to murder, or the lesser grade of offense, that of shooting at another not in his own defense or under other circumstances of justification; and then, according to the truth as you shall find it in this case, if you find that he did the shooting, what would be a proper grade of the offense." Error, for reasons already stated.

10. The court charged: "Now, in that connection the court will give you in charge certain rules of law for your guidance; to illustrate: 'If it has been shown to your satis-

faction in this case that Harper took the land deed from Wiggins, and that they became involved in a difficulty, and that immediately thereupon, that Harper left the store and the premises of Wiggins; that Wiggins armed himself with a pistol and pursued him, and that Harper ran with Wiggins in pursuit of him; that Wiggins was armed with a pistol with five chambers in it, a pistol which would shoot five times, and if five shots were immediately heard in that vicinity; now if that has been shown in this case to your satisfaction, that would be the proof of various facts and circumstances, sustaining by their consistency the hypothesis claimed by the State in that connection, and that is, that Wiggins did the shooting, and that there was no other reasonable hypothesis in that connection except that; that is to say, that there is no other reasonable conclusion which the jury could reach that Wiggins did not do the shooting and that it was done by some one else." Error, in that the facts proved did not warrant such charge; and in that the court invaded the province of the jury and expressed an opinion as to what had been proved, and in substance told the jury that the facts proved demanded that they should find that the defendant was the person who did the shooting.

11. The court charged: "Now, that is what this law means that the court will give you in charge; and if the evidence is satisfactory to your minds under these rules of law which the court will give you in charge, that Wiggins did the shooting, whether it has been shown by direct or positive evidence, or by any witness who has testified to seeing him shoot, if you are otherwise satisfied under these rules of law, then that would be sufficient to establish that fact, that he did the shooting as alleged in the indictment and as claimed by the State, and it would then remain in this case simply for you to grade his offense and determine whether or not he was guilty of an assault with intent to murder, or of the lesser grade of offense, that of shooting at another not in his own defense or under circumstances of justification." Error, in expressing an opinion as to what was proved, and in directing the jury that such facts would suffice to prove said point.

*J. D. Sparks* and *L. L. Thomas*, for plaintiff in error.

*John W. Bennett, solicitor-general,* contra.

SIMMONS, C. J.   1. Wiggins was indicted for an assault with intent to murder.   On the call of his case he moved to continue on the ground that two of his witnesses were absent.   He testified that they had been subpœnaed, that their testimony was material, that he desired them for the purpose of corroborating the testimony of his other witnesses, but that he did not know to what they would testify if they were present.   The court refused to grant the continuance; and the trial was had, which resulted in the conviction of the accused.   The latter made a motion for a new trial; it was overruled, and he excepted.   One of the grounds of the motion for a new trial was the refusal of the continuance.   Under his testimony, the court, we think, was right in refusing the continuance.   While it is true he said the testimony was material and he wished it to corroborate his other witnesses, it was not for him to determine whether the testimony of the absent witnesses was material.   The materiality of their testimony was a question for the decision of the court, and the court could not decide it unless informed of the nature and character of the testimony which the absent witnesses, if present, would give.   If the case had been continued and the presence of the witnesses thereafter secured, their testimony might not have been material; nor can we understand how the accused could have testified that the testimony was material when he stated upon the examination that he did not know to what facts the absent witnesses would testify.

2. The trial judge, after the evidence was closed, without hearing from counsel on either side, announced for the information of counsel that he would give them his views of the law of the case, and thereupon he made an extensive charge upon the law and facts, intimating very strongly that counsel would be confined to the views of the law and the issues of fact which he had presented.   The accused excepted to this conduct and made it one of the grounds of his motion for a new trial.   We think that the proper practice is, that the judge may indicate his views of the law and how he will charge the

jury, but that he ought, before doing so, to hear from counsel their views of the law which ought to control the case. Counsel are generally employed some time before the case is tried; and prior to the trial they study the law of the case as applied to the facts they expect to be proved at the trial. If they are diligent, intelligent and skillful, they ought to know, and generally do know, more about the law of the particular case than does the judge, who perhaps has never heard the points made before. When, however, he has patiently heard from counsel on both sides, he ought to know more of the law which governs the case than counsel on either side. Very few judges, if any, know all of the law. My experience of twenty years on the bench teaches me that learned counsel are of great assistance to a judge in arriving at the true law of a case. After a trial judge has heard from counsel, he may then, if he deem it best, announce, in advance of the argument before the jury, the views he entertains upon the issues of law involved in the case; and if his mind is settled in regard thereto, he may indicate how he will charge as to such issues; but we think it is not proper practice for the judge, before hearing from counsel, to make an extensive and detailed statement as to what the charge will be or to direct the line of argument in such manner as to limit the counsel of the accused, in the argument before the jury, to the issues suggested by the court. There may be other issues or other points of law than those which the judge has suggested, issues and points which, had he heard from counsel, he would have allowed them to argue. Under the practice in our State, counsel are allowed, in criminal cases, to argue to the jury the law as well as the facts, and it would be wrong to deprive the accused of the right of his counsel to present to the jury such views of the law as he may think applicable to the case. In a close and doubtful case, such conduct on the part of the judge would be cause for the grant of a new trial.

3. The court was requested to charge the jury on the subject of justifiable homicide, and refused to do so. We have carefully read the evidence in the case, and find that there was no theory thereunder upon which the alleged assault

could have been justified.   Wiggins obtained the deed by a champertous and illegal contract, and it was not a violation of his rights for Harper, when he saw the deed lying upon Wiggins's desk, to take it and put it into his pocket.   Wiggins, having no legal right to the deed, would not be justified in shooting Harper for taking it, especially when Harper was running from him.

4.  The evidence demanded the verdict, and there was no error in refusing to grant a new trial.

*Judgment affirmed.    All the Justices concurring.*